UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGUSTIN C.,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | Case No. CV 18-6044-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **<u>INTRODUCTION</u>**

On July 11, 2018, plaintiff Agustin C. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") properly considered plaintiff's subjective complaints.

Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-8; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-6.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ's reasons for discounting plaintiff's testimony were not supported by substantial evidence. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 44 years old on the alleged disability onset date, completed some high school in Mexico. AR at 125, 142, 292, 537. Plaintiff has past relevant work as an automobile mechanic, construction worker, and air conditioning mechanic. *Id*. at 138.

On May 27, 2014, plaintiff filed an application for a period of disability and DIB, alleging an onset date of May 1, 2014 due to cervical disc protrusion, cervical radiculitis, cervical sprain or strain, lumbar radiculitis, lumbar sprain or strain, anxiety, and high cholesterol. *Id*. at 142. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id*. at 167-70, 175-80.

On December 2, 2016, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ, with a Spanish interpreter present to assist as needed. *Id*. at 118-41. The ALJ also heard testimony from Kristan Cicero, a vocational expert. *Id*. at 137-40. The ALJ held a supplemental hearing on April 7, 2017, at which plaintiff testified, again with a Spanish interpreter present. *Id*. at 91-117. The ALJ also heard testimony from Dr. Hugh Savage, a medical expert, and Dr. May, a vocational expert. *Id*. at 96-116. On May 30, 2017, the ALJ

2

denied plaintiff's claim for benefits. *Id*. at 37-46.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 1, 2014, the alleged onset date. *Id*. at 39.

At step two, the ALJ found plaintiff suffered from the following severe impairments: bilateral shoulder pain secondary to osteoarthritis of the acromioclavicular joints; tendinitis of the supraspinatus and infraspinatus muscles; mild subacromial bursitis; cervicalgia secondary to degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; and sleep disorder. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id*. at 42.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined he has the RFC to perform a narrowed range of light work in that he was able to: lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours out of an eight-hour workday; sit for six hours out an eight-hour workday; occasionally climb or stoop; and frequently kneel, crouch, or crawl. *Id*.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as an automobile mechanic, construction worker, or air conditioning mechanic. *Id*. at 44.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

At step five, the ALJ found that given plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including packing line worker, produce sorter, and laundry worker. *Id*. at 45-46. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 46.

Plaintiff filed a timely request for review of the ALJ's decision and submitted additional evidence, but the Appeals Council denied the request for review. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole,

"weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

Plaintiff contends the ALJ failed to properly evaluate his testimony. P. Mem. at 4-8. Specifically, plaintiff argues the ALJ only provided one reason for finding his complaints less than credible, that plaintiff only received conservative treatment, and this reason was not clear and convincing and supported by substantial evidence. *Id.*

The ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *accord Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's testimony, including: (1)

ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ implicitly found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. *See* AR at 42-44. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ provided two reasons for discounting plaintiff's credibility: (1) plaintiff's conservative treatment was inconsistent with the alleged severity of his symptoms; and (2) the objective medical evidence did not support the severity of his symptoms. *Id.*; *see Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (an ALJ need not recite "magic words," a reviewing court may draw inferences from an opinion).

The ALJ's first ground for discounting plaintiff's credibility was that his treatment was inconsistent with the alleged severity of his symptoms. AR at 44; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Tommasetti*, 533 F.3d at 1039-40 (conservative treatment may be a clear and convincing reason for discounting a claimant's credibility). The ALJ noted plaintiff only received conservative treatment, consisting of physical therapy, non-steroidal anti-inflammatories, and narcotic pain medication. AR at 43-44. Plaintiff contends treatment with narcotic pain medication and anti-inflammatory injections is not conservative, and he was recommended other non-conservative treatment options. P. Mem. at 5-6.

The Ninth Circuit and its district courts have generally viewed the use of narcotic pain medication as non-conservative treatment. *See Lapeirre-Gutt v.*

*Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *see, e.g., Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative). But in these cases, the claimants typically used narcotic medications in conjunction with other treatments that were also not conservative. Thus, the use of narcotic medication, by itself, may be considered conservative treatment. *See Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded to conservative treatment, which included the use of narcotic medication); *Higinio v. Colvin*, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (holding that, despite the fact that plaintiff had been prescribed narcotic medication at various times, plaintiff's treatment as a whole was conservative); *Grisel v. Colvin*, 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014) (use of narcotic pain medication was conservative when it provided relief and was not in combination with other treatments).

Here, the ALJ correctly noted plaintiff used narcotic medication in conjunction with conservative care such as physical therapy, anti-inflammatories, and chiropractic care. *See, e.g., Huizar*, 428 Fed. Appx. at 680; *Tommasetti*, 533 F.3d at 1040 (characterizing physical therapy and anti-inflammatories as conservative); *Garcia v. Colvin*, 2014 WL 6750288, at *4 (C.D. Cal. Dec. 1, 2014) (Torodal injection constituted conservative care); *Lane v. Colvin*, 2013 WL 3449631, at *2 (C.D. Cal. Jul. 9, 2013) (chiropractic treatment is conservative). On this basis, his treatment can therefore be characterized as conservative.

But the ALJ failed to recognize the record reflects that other non-conservative treatment options, including epidural injections and surgery, were discussed with or recommended to plaintiff. Dr. Arthur Harris, an orthopedic

surgeon treating plaintiff in connection to his worker's compensation case, discussed epidural steroid injections and surgery as options for plaintiff. AR at 631, 638, 644, 651, 662, 680. In September 2015, an examining spine surgeon at Kaiser recommended epidural injections, selective nerve root block, and a Rhizotomy procedure, but did not recommend surgery for plaintiff. *Id*. at 1387. The physician's reason was not for lack of severity, but because plaintiff's pain was multifactorial and she was concerned the surgery could not predictably yield a good result. *Id*. In February 2016, Dr. Edwin Haronian, an examining spine specialist, opined plaintiff was a candidate for transforaminal lumbar interbody fusion. *Id*. at 690-91. Moreover, plaintiff appeared to have undergone right shoulder surgery in late 2015. *See id*. at 684; *see also id*. at 706, 722, 734. Thus, although plaintiff received conservative treatment, his physicians actually recommended non-conservative treatment.

It is unclear why plaintiff opted to continue with conservative care rather than undergo spinal surgery. *See* AR at 680, 708, 730, 745. Plaintiff explained why he declined epidural injections, namely, that he tried epidural injections but they did not provide lasting relief. *See* P. Mem. at 6; AR at 631. But he failed to explain why he did not proceed with the spinal surgery, although as noted, there were differing medical recommendations about this. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). Nor did plaintiff discuss his shoulder surgery.

Nonetheless, the ALJ did not discount plaintiff's testimony because he failed to seek treatment. The ALJ discounted plaintiff's complaints of chronic pain as not supported by his "relatively conservative treatment." AR at 44. Although on remand the ALJ may find plaintiff's complaints less than credible for other reasons such as a failure to seek treatment, the ALJ's finding of conservative treatment was

not supported by substantial evidence because physicians recommended non-conservative treatment including back surgery, and right shoulder surgery was actually performed.

The ALJ's second reason for discounting plaintiff's testimony was his symptoms were not supported by the objective medical evidence. *See* AR at 42-44. The lack of objective medical evidence to support allegations of limitations is a factor that may be considered when evaluating credibility, but it is insufficient by itself. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"). Because the court has found that the ALJ's finding of conservative treatment was not supported by substantial evidence, the lack of objective medical evidence is the only remaining reason cited by the ALJ for finding plaintiff's complaints less than credible. This reason by itself cannot be a basis for discounting plaintiff's testimony.

Moreover, it does not appear the ALJ's finding of a lack of objective medical evidence was supported by substantial evidence. There is no dispute the objective medical evidence reflects severe impairments and supports functional limitations. The question is the extent of those limitations.[2] For the relevant period, the ALJ correctly noted that diagnostic imaging showed plaintiff had, among other things, osteophyte formation in the cervical spine with bilateral neural

---

[2] The ALJ stated Dr. Harris, whose opinion he gave less weight, opined plaintiff should be precluded from repetitive cervical motion. *See* AR at 44. The record does not support this. The record in fact reflects Dr. Harris did not opine plaintiff could work with an accommodation of no repetitive cervical motion, but instead opined plaintiff was temporarily totally disabled in the worker's compensation context. *See, e.g., id.* at 667, 742.

9

foraminal narrowing, and disc bulge and facet arthropathy in the lumbar spine; a physician found no abnormal findings in a February 2016 x-ray of the knees; plaintiff frequently exhibited a normal gait; plaintiff exhibited a limited range of motion of the cervical spine, lumbar spine, and knees; and plaintiff had a normal range of motion in shoulder with pain on one occasion. *See* AR at 43, 1270, 1292-93, 1547-48. Based on those findings, the ALJ concluded the medical evidence did not support plaintiff's complaints of chronic pain. *See id.* at 43-44.

But the ALJ's analysis was incomplete. Although the ALJ is not required to discuss every piece of evidence in the record, he may also not omit evidence that is significant or probative. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ merely mentioned a few findings from over a thousand pages of medical records and failed to discuss other probative findings. A July 2015 MRI showed plaintiff had, among other things, a 3mm and 4mm disc herniation in two levels of the lumbar spine, both abutting the thecal sac. AR at 690. Plaintiff not only consistently exhibited limited range of motion in the cervical and lumbar spines, but also pain upon motion, tenderness, and spasm. *See, e.g., id.* 636-37, 678-79, 686-89, 984-85, 1270, 1282, 1299, 1383, 1661. Although plaintiff had some negative straight leg raise and other pain evaluation tests, he also regularly had positive tests. *See id.* at 544, 689, 985, 1227, 1282, 1299. As for plaintiff's knee, although the ALJ correctly noted one physician observed no abnormal findings in the February 2016 x-ray of plaintiff's knee, upon review by another physician, the second physician diagnosed plaintiff with early degenerative joint disease because he found an irregular contour articular lateral facet, small superior patella marginal osteophyte. *See id.* at 1547, 1603.

Accordingly, the ALJ failed to cite clear and convincing reasons supported by substantial evidence for discounting plaintiff's complaints of chronic pain and symptoms.

# V.
# **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to resolve outstanding issues. On remand, the ALJ shall reconsider his determination regarding the credibility of plaintiff's subjective complaints. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

## VI.
## **RECOMMENDATION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 26, 2020

_____
SHERI PYM
United States Magistrate Judge